# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| FREEDOM PATENTS LLC, | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No.  4:23-cv-00303 |
| | § | Judge Mazzant |
| DISH NETWORK CORPORATION, DISH | § | |
| NETWORK L.L.C., and DISH NETWORK | § | |
| SERVICE L.L.C., | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants DISH Network Corporation, DISH Network L.L.C., and DISH Network Service L.L.C. Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado (Dkt. #18). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

Plaintiff Freedom Patents LLC ("Freedom") filed the instant suit against Defendants DISH Network Corporation, DISH Network L.L.C., and DISH Network Service L.L.C. (collectively, "DISH") on April 7, 2023, for infringement of United States Patents Nos. 8,284,686 ("the '686 Patent"), 8,374,096 ("the '096 Patent"), and 8,514,815 ("the '815 Patent") (Dkt. #1). Freedom has accused various DISH products, including the DISH Wireless Joey, that implement multiple-input, multiple output ("MIMO") Wi-Fi capabilities (collectively, the "Accused Products") (Dkt #1).

Freedom is a limited liability company located in Tyler, Texas (Dkt. #1 ¶ 1). DISH Network Corporation is incorporated under the laws of the State of Nevada and is headquartered in Colorado (Dkt. #1 ¶ 2; Dkt. #18 at p. 5). DISH Network L.L.C. is a limited liability company

located in Colorado (Dkt. #1 ¶ 4; Dkt. #18 at p. 5).  DISH Network Service L.L.C. is a limited liability company located in Colorado (Dkt. #1 ¶ 5; Dkt. #18 at p. 5).

On July 17, 2023, DISH filed the present motion, requesting the case be transferred to the District of Colorado pursuant to 28 U.S.C. § 1404(a) (Dkt. #18). On January 16, 2024, after the parties conducted venue discovery[1], Freedom responded (Dkt. #60). On January 31, 2024, DISH replied (Dkt. #66). On February 8, 2024, Freedom filed its sur-reply (Dkt. #68).

## LEGAL STANDARD

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The purpose of § 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

In a patent case, a motion to transfer under 28 U.S.C. § 1404(a) is governed by the law of the regional circuit, in this case the Fifth Circuit. *In re TS Tech U.S. Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201,

---

[1] On August 16, 2023, the Court granted the parties' joint motion for limited expedited venue discovery (Dkt. #32).

203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*; *TikTok*, 85 F.4th at 358. The plaintiff's choice of venue is generally not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.  And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding

3

whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). "[A] district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318). A district court also "abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case . . . are in the transferee forum.'" *Id.* at 366 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)).

## ANALYSIS

DISH argues that this case should be transferred to the District of Colorado under § 1404. Neither party disputes that this case could have been filed originally in the District of Colorado. The Court therefore moves on to the second part of the transfer inquiry: if transfer is appropriate under the private and public interest factors. The Court finds that the factors tip against transfer.

## I.       Private Interest Factors

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315. The Court will discuss each factor in turn.

### A.       The Relative Ease of Access to Sources of Proof

This factor "focuses on the location of 'documents and physical evidence relating to the [case].'" *TikTok*, 85 F.4th at 358. In patent infringement cases, courts often consider "the bulk of the relevant evidence usually comes from the accused infringer" and courts recognize "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple*

4

*Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009)) (applying Fifth Circuit law).

This relative ease of access to sources of proof is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient. *Volkswagen II*, 545 F.3d at 316. "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *TikTok*, 85 F.4th at 358. "But when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *Id.* (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)). "The location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Planned Parenthood*, 52 F.4th at 630. When it comes to electronically stored sources of proof, the Court should consider "the location of servers where documents are stored," as well as "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

The Court finds this factor is neutral. The evidence and briefing before the Court identify two categories of documents related to DISH: (1) design and development documents (Dkt. #18 at p. 9), and (2) "non-technical documents, including marketing and financial records relating to the [A]ccused [P]roducts" (Dkt. #18 at p. 9). With regard to the design and development documents, the evidence indicates that the most relevant documents for DISH are stored in Wyoming and are electronically available (Dkt. #60 at p. 10). And those documents are equally accessible from this District as from the District of Colorado, since DISH employees in this District can access those

documents (Dkt. #60 at p. 10). Further, at this point, DISH has not alleged there *are* relevant documents concerning design and development of the Accused Products that are maintained in Colorado, only "*potentially* relevant documents" (Dkt. #18 at p. 9). Even if those relevant design and development documents do exist and are maintained in Colorado, they are likely accessible by DISH employees in this District. With regard to the non-technical documents, DISH states those are maintained in Colorado (Dkt. #18 at p. 9). Without any evidence to the contrary, those non-technical documents appear relatively more accessible in Colorado.

Meanwhile, Freedom's sources of proof are stored in this District, both physical documents and electronic documents (Dkt. #60 at p. 11). To the extent documents are electronically available, the only person who can access those documents electronically, Jon Rowan, resides in this District (Dkt. #60 at pp. 11, 14). So with DISH's design documents favoring neither district, DISH's non-technical documents favoring the District of Colorado, and Freedom's documents favoring this District, the Court finds this factor is neutral.

## B.   The Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure the attendance of witnesses. *TikTok*, 85 F.4th at 360 (citing *Volkswagen II*, 545 F.3d at 315). "This factor favors transfer where 'non-party witnesses . . . are outside th[is] District's subpoena power' and 'a proper venue that does enjoy absolute subpoena power for both depositions and trial' is available." *Id.* (citing *Volkswagen II*, 545 F.3d at 316). This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (quoting *Planned Parenthood*, 52 F.4th at 630–31).

A court's subpoena power is governed by the Federal Rules of Civil Procedure 45. FED. R. CIV. P. 45. "For purposes of § 1404(a), there are three important parts to Rule 45." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 318 (E.D. Tex. 2019) (citing *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014)). First, the Court "has subpoena power over witnesses that live or work within 100 miles of the courthouse." *Id.* (citing FED. R. CIV. P. 45(c)(1)(A)). Second, the Court has subpoena power "over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in 'substantial expense.'" *Id.* (quoting FED. R. CIV. P. 45(c)(1)(B)(i)-(ii)). "Third, [this Court has the] power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works." *Id.* (citing FED. R. CIV. P. 45(a)(2), (c)(1)).

The Court finds this factor is neutral. In its motion, DISH names only one witness for this factor: Paul Langer, a former DISH employee who resides in Colorado (Dkt. #18 at p. 12). It also states that "because the development of the [A]ccused [P]roducts and features occurred in Colorado, not Texas, it is far more likely that any other witnesses with relevant knowledge that come to light during discovery will reside in Colorado and not in Texas" (Dkt. #18 at p. 13). In response, Freedom identifies multiple third-party witnesses in this District, including several third-party distributors and a representative of Arcadyan, DISH's third-party supplier (Dkt. #60 at pp. 13–14).[2] DISH does not allege or show that any witness would be unwilling to testify, so this factor garners less consideration. *See TikTok*, 85 F.4th at 360. And the Court will not consider

---

[2] As further evidence weighing against transfer, Freedom cites to multiple third-party witnesses associated with the Wi-Fi Alliance (Dkt. #60 at p. 13). Because the Court cannot discern DISH's relationship with the Wi-Fi Alliance from the parties' representations (*see* Dkt. #60 at p. 13; Dkt. #66 at p. 4 (presenting competing evidence)), the Court does not consider the potential Wi-Fi Alliance witnesses when weighing this factor.

hypothetical or unidentified witnesses that might reside in Colorado rather than Texas. *See Moore v. Unit Tex. Drilling, LLC*, No. 3:08-CV-2080-N, 2009 WL 10704741, at *3 (N.D. Tex. Nov. 17, 2009) ("[Availability of compulsory process] is not based on hypothetical unwilling witnesses; a party seeking transfer must specifically identify unwilling witnesses."). So weighing DISH's lone identified witness, who is not alleged or shown to be unwilling, against Freedom's various witnesses, the Court finds this factor is neutral.

### C.    Cost of Attendance for Willing Witnesses

"The third private factor, which considers the conveniences for witnesses who attend willingly, has been described as the most important factor." *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021) (citations omitted). In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). "A district court should assess the relevance and materiality of the information the witness may provide. Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary." *Genentech*, 566 F.3d at 1343.

The Fifth Circuit uses a "100-mile thresh-old" to assess this factor. *TikTok*, 85 F.4th at 361 (citing *Volkswagen II*, 545 F.3d at 315). "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* While the Court can consider imposed costs on witnesses when the proposed transfer is within the 100 mile threshold, "this factor has greater significance when the distance is greater than 100 miles."

*Radmax*, 720 F.3d at 289. The Federal Circuit, in applying Fifth Circuit law, has "held that 'the "100-mile" rule should not be rigidly applied' where 'witnesses . . . will be required to travel a significant distance no matter where they testify.'" *Apple*, 979 F.3d at 1341 (quoting *Genentech*, 566 F.3d at 1344).

The Court finds this factor weighs against transfer. DISH, in its motion, provides names of four individuals who "developed the accused DISH Wireless Joey and Wireless Joey Access Point 2": Gregg Martch, James Brunner, Robert Sadler, and Dan Minnick (Dkt. #18 at p. 14). All four of those individuals live in Colorado (Dkt. #18 at p. 14). DISH also claims that "any witnesses who testify regarding DISH's marketing of the accused DISH products, DISH's revenue from the accused DISH products, and DISH customers' usage of the accused DISH products will be located and live in Colorado" (Dkt. #18 at p. 14). Freedom identifies Jon Rowan, the manager of Freedom, as a relevant witness who lives in this District (Dkt. #60 at p. 14). Freedom also identifies six DISH employees in this District it believes are relevant to damages and infringement: Amir Ahmed, Anisha Garg, Osama Ahmad, Tyler Arnold, Andrew Banatoski, and Julio Novelo, and Eric Pacheco (Dkt. #60 at p. 15 (identifying witnesses); Dkt. #68 at p. 7 (claiming the witnesses are "relevant to damages and infringement")).

After review of the evidence presented by DISH, the Court believes DISH's named witnesses are at least somewhat relevant, but their relevance appears to be lower since, as noted *infra* II.B, the amount of design and development decisions related to the Accused Products that actually occurred in Colorado (and, presumably, by these witnesses) is questionable. The one witness who appears the most relevant is Robert Sadler, since DISH identifies him as the "Director, DBS Product Development, and [] the current director responsible for ongoing product

development of the DISH Wireless JOEY and Wireless Joey Access Point 2" (Dkt. #18, Exhibit 2 ¶ 7). But based on the evidence, the Court cannot discern how relevant the testimony of the other named witnesses would be. Even Sadler's potential relevance is lower. And as to DISH's unnamed potential witnesses, the Court will not consider them in this analysis. The Court cannot properly weigh the relevance and materiality of information known by witnesses who have yet to be identified. *See Genentech*, 566 F.3d at 1344 (finding this factor favored transfer when the moving party had "identified witnesses [in the transferee district] relevant" to the issues of "inequitable conduct, infringement, and invalidity").

After review of the evidence presented by Freedom, the Court considers Jon Rowan highly relevant to this case, since he is the manager of Freedom and has knowledge of "Freedom's ownership and purchase of the assert[ed] patents, and their licensing" (Dkt. #60 at p. 15). As to DISH's argument that it is as convenient for Mr. Rowan to travel to Denver as it is to Sherman, the Court is unpersuaded. "[I]t is easier for [a witness] to drive a few hours than to fly to another state." *R2 Sols. LLC v. Target Corp.*, No. 4:21-cv-92, 2021 WL 2550908, at *4 (E.D. Tex. June 22, 2021). As to the DISH employees Freedom identifies as relevant witnesses within this District, Freedom believes the employees are "relevant to damages and infringement" (Dkt. #68 at p. 7), and DISH only refutes the relevance of one of those employees (*compare* Dkt. #66 at p. 6 ("Amir Ahmed[] is an EVP of Sales who is highly *unlikely to have any relevant knowledge or be a trial witness*") *with* Dkt. #66 at p. 6 ("And the remaining DISH employees . . . are highly *unlikely to testify at trial*")) (emphasis added).

Accordingly, the Court considers two witnesses to have some higher degree of relevance and materiality: Sadler and Rowan. The remaining witnesses appear relevant and material, but at

a lower level. Sadler's potential relevance is tampered by the question of how much design and development of the Accused Products actually occurred in Colorado. Rowan remains highly relevant as the manager of Freedom. So, on balance, the Court finds this factor weighs against transfer.

### D.    Other Practical Problems

The Court "considers all other practical problems that make trial of a case easy, expeditious, and inexpensive." *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315). "This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties." *R2 Sols. LLC v. FedEx Corp. Servs., Inc.*, No. 4:21-cv-940, 2022 WL 2484539, at *4 (E.D. Tex. July 6, 2022), *vacated on other grounds by In re FedEx Corp. Servs., Inc.*, No. 2022-156, 2022 WL 10887770 (Fed. Cir. Oct. 19, 2022).

The Court finds this factor weighs against transfer. Freedom has asserted the same patents in seven currently pending cases.[3] On the day it filed this lawsuit, Freedom filed six lawsuits in total involving the same patents and technology against six defendants.[4] Thirty three days later, it filed

---

[3] The currently pending cases are *Freedom Patents LLC v. Acer Inc.*, E.D. Tex. No. 4:23-cv-00299-ALM; *Freedom Patents LLC v. Altice USA, Inc.*, E.D. Tex. No. 4:23-cv-00300-ALM; *Freedom Patents LLC v. DISH Network Corp.*, E.D. Tex. No. 4:23-cv-00303-ALM (this case); *Freedom Patents LLC v. Verizon Commc'ns*, E.D. Tex. No. 4:23-cv-00304-ALM; *Freedom Patents LLC v. AT&T Inc.*, E.D. Tex. No. 4:23-cv-00418-ALM; *Freedom Patents LLC v. Hisense Co. Ltd.*, E.D. Tex. No. 4:23-cv-00419-ALM; and *Freedom Patents LLC v. TCL Tech. Group Corp.*, E.D. Tex. No. 4:23-cv-00420-ALM.
Freedom also filed the following cases that have settled: *Freedom Patents LLC v. Charter Commc'ns, Inc.*, E.D. Tex. No. 4:23-cv-00301-ALM; *Freedom Patents LLC v. Comcast Corp.*, E.D. Tex. No. 4:23-cv-00302-ALM; *Freedom Patents LLC v. Tsinghua Tongfang Co., Ltd.*, E.D. Tex. No. 4:23-cv-00421-ALM; and *Freedom Patents LLC v. TPV Tech. Ltd.*, E.D. Tex. No. 4:23-cv-00422-ALM.
[4] *Freedom Patents LLC v. Acer Inc.*, E.D. Tex. No. 4:23-cv-00299-ALM; *Freedom Patents LLC v. Altice USA, Inc.*, E.D. Tex. No. 4:23-cv-00300-ALM; *Freedom Patents LLC v. Charter Commc'ns, Inc.*, E.D. Tex. No. 4:23-cv-00301-ALM; *Freedom Patents LLC v. Comcast Corp.*, E.D. Tex. No. 4:23-cv-00302-ALM; *Freedom Patents LLC v. DISH Network Corp.*, E.D. Tex. No. 4:23-cv-00303-ALM (this case); and *Freedom Patents LLC v. Verizon Commc'ns*, E.D. Tex. No. 4:23-cv-00304-ALM.

five more involving the same patents and technology against five defendants.[5] There is a clear judicial economic benefit to keeping the seven related cases, involving the same patents and same technology, in this District. "It would be inefficient for numerous districts across the country to resolve similar disputes based on the same patents." *R2 Sols. LLC v. FedEx Corp. Servs., Inc.*, 2022 WL 2484539, at \*5. And transferring this case to the District of Colorado "could result in inconsistent rulings and claim construction, which is the exact problem courts try to avoid when analyzing this factor." *Id.* Accordingly, this factor weighs against transfer.

## II.    Public Interest Factors

Next, the Court considers the public interest factors. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315.

### A.    The Administrative Difficulties Flowing from Court Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). When a "case appears to be timely proceeding to trial before the [transferor d]ivision[, t]hat fact [] counsels against transfer." *Planned Parenthood*, 52 F.4th at 631.

DISH argues this factor is neutral or weighs slightly in favor of transfer, citing that this district "has a higher number of pending cases" but also has a shorter average time to trial than

---

[5] *Freedom Patents LLC v. AT&T Inc.*, E.D. Tex. No. 4:23-cv-00418-ALM; *Freedom Patents LLC v. Hisense Co. Ltd.*, E.D. Tex. No. 4:23-cv-00419-ALM; *Freedom Patents LLC v. TCL Tech. Group Corp.*, E.D. Tex. No. 4:23-cv-00420-ALM; *Freedom Patents LLC v. Tsinghua Tongfang Co., Ltd.*, E.D. Tex. No. 4:23-cv-00421-ALM; and *Freedom Patents LLC v. TPV Tech. Ltd.*, E.D. Tex. No. 4:23-cv-00422-ALM.

the District of Colorado (Dkt. #18 at pp. 16–17). Freedom, on the other hand, argues this factor

weighs against transfer, since this District has a 17-month time to trial average than the District of

Colorado, and that number increases to 29 months when measuring time to trial average for patent

cases (Dkt. #60 at pp. 17–18).

The Court finds this factor weighs very slightly against transfer. First, the Court recognizes

that "courts have held that this factor is 'speculative.'" *Planned Parenthood*, 52 F.4th at 631 (citing

*Genentech*, 566 F.3d at 1347). Second, the Court acknowledges the historic average time to trial in

this District is shorter than that in the District of Colorado, a fact DISH seems to concede (Dkt.

#18 at p. 17). And as Freedom indicates, that historic average time to trial number only increases

for patent cases (Dkt. #60 at p. 17; Dkt. #60, Exhibit 67 at p. 2; Dkt. #60, Exhibit 68 at p. 2). But

Freedom does not provide a reason for this case to need to proceed quickly, such as, for example,

"[Freedom's] position in the market [] being threatened." *In re Juniper Networks, Inc.*, 14 F.4th

1313, 1322 (Fed. Cir. 2021). So the Court is not inclined to find this factor "worthy of important

weight" since Freedom does not provide the Court with any particular reason to find this case

needs a particularly "rapid disposition." *Id.* at 1322. Accordingly, the Court finds this factor

weighs very slightly against transfer.

**B.    The Local Interest in Having Localized Interests Decided at Home**

The second public interest factor is the local interest in having localized interests decided

at home. *Volkswagen II*, 545 F.3d at 315. "Important considerations include the location of the

injury, witnesses, and the [p]laintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th 413, 435 (5th

Cir. 2022) (citations omitted). This factor recognizes that "jury duty is a burden that ought not to

be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The Court should "look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435). "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quoting *Def. Distributed*, 30 F.4th at 435). The Court should not consider "the parties' connections to the venue because the local interest analysis is a public interest factor." *In re Clarke*, No. 24-50079, 2024 WL 886953, at *5 (5th Cir. Mar. 1, 2024). "[T]his factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *TikTok*, 85 F.4th at 364 (quoting *Volkswagen II*, 545 F.3d at 317–18). "Also, this factor can weigh against transfer when the 'citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district].'" *Id.* (quoting *Planned Parenthood*, 52 F.4th at 632).

The Court finds this factor is neutral. To determine if a venue has a local interest in a dispute, the Court must look to where the "critical conduct" occurred. *See TikTok*, 85 F.4th at 364. In *TikTok*, the Fifth Circuit found the district court had not abused its discretion in determining this factor was neutral since (1) the transferor district had "'no relevant factual connection to the' dispute" and (2) the alleged misconduct occurred in China, not in the potential transferee district. *Id.* at 365 ("Meishe's source code was allegedly misappropriated in China by Chinese engineers. The implementation of that misappropriated code into TikTok was the only relevant event that occurred in the Northern District of California."). "Therefore, neither the

transferor district nor the transferee district c[ould] be said to have a strong interest in th[e] dispute." *TikTok*, 85 F.4th at 365.

The same rationale applies here. DISH, in its motion, represents that "[t]he DISH hardware and software engineers who developed the accused systems, developed the software associated with it, and are responsible for maintaining them, were and are based in Colorado" (Dkt. #18 at p. 9). It also represents that "DISH engineers working and based in Colorado were primarily or entirely responsible for the development of the accused hardware, *to the extent that this work was done by DISH*" (Dkt. #18, Exhibit 2 ¶ 7) (emphasis added). In response, Freedom points to deposition testimony of DISH's corporate representative that indicates the Accused Products were designed and developed by Arcadyan, a supplier based in Taiwan (Dkt. #60 at p. 7; Dkt. #18 at p. 9 n.3 (indicating location of Arcadyan's headquarters)). DISH does not dispute this on reply; it only categorically states that Colorado has a "significant connection to the design and development of the [A]ccused [P]roducts" (Dkt. #66 at p. 6). But DISH does not provide the Court with any evidence of any development of the accused products or software that *actually* occurred in Colorado that would give the citizens of Colorado a strong interest in the dispute.

While the Court finds no events giving rise to the suit occurred in Colorado, it also finds no events giving rise to the suit occurred in this District. Freedom's presence in this District and "purchase of the asserted patents from this [D]istrict" do not create events giving rise to this suit, they indicate Freedom's ties to the District (Dkt. #60 at p. 14). But the Fifth Circuit specifically instructed that it does not look to "the parties' significant connections to each forum" when analyzing this factor. *TikTok*, 85 F.4th at 364. So while Freedom and its members have a significant

connection to this District, that itself does not endow the citizens of this District a strong interest in this dispute. Accordingly, the Court finds this factor is neutral.

### C.      Familiarity of the Forum with Governing Law

This factor "considers the current district's 'familiarity with the law that will govern the case.'" *TikTok*, 85 F.4th at 365 (quoting *Volkswagen II*, 545 F.3d at 315). Both parties agree that this factor is neutral (Dkt. #18 at p. 18; Dkt. #60 at p. 19). The Court finds this factor is neutral.

### D.      Avoidance of Conflict of Laws

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" *Def. Distributed*, 30 F.4th at 436 (quoting *Volkswagen II*, 545 F.3d at 315). Both parties agree that this factor is neutral (Dkt. #18 at p. 18; Dkt. #60 at p. 19). The Court finds this factor is neutral.

## III.    Summary

The Court finds two factors weigh against transfer, one factor weighs very slightly against transfer, and five factors are neutral. Finding no factors weigh toward transfer, the Court finds DISH has not met its burden to demonstrate that the District of Colorado is clearly more convenient, and the Court declines to transfer this case to the District of Colorado.

## CONCLUSION

It is therefore **ORDERED** that Defendants DISH Network Corporation, DISH Network L.L.C., and DISH Network Service L.L.C. Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado (Dkt. #18) is hereby **DENIED.**

16

**IT IS SO ORDERED.**

**SIGNED this 15th day of March, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE